UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MIRZA GRUBBS                                     CIVIL ACTION

VERSUS                                           NO. 15-182

WINN DIXIE PROPERTIES, LLC ET AL.                SECTION "J" (2)

**ORDER AND REASONS ON MOTIONS**

This is a personal injury case in which two motions are pending before me: (1) Plaintiff's Motion to Compel Discovery, Record Doc. No. 9, and (2) Defendant Winn-Dixie's Motion to Compel Response to First Set of Interrogatories and Request for Production of Documents and Deposition of Plaintiff, Record Doc. No. 10. Timely opposition memoranda were filed, Record Doc. Nos. 11 and 12, and plaintiff was granted leave to file a reply memorandum. Record Doc. Nos. 13, 15, 16. Having considered the written submissions of counsel, the record, and the applicable law, the motions are determined as follows.

As an initial matter, the portion of Winn-Dixie's motion seeking an order compelling responses to its written discovery is dismissed as moot. The sole basis for the motion was plaintiff's failure timely to provide responses to Winn-Dixie's March 10, 2015, interrogatories and requests for production. Responses have now been provided. Record Doc. No. 12 at p. 1. If Winn-Dixie believes that any of the responses are deficient, it may

file a new motion identifying particular deficiencies and seeking appropriate relief, but only after it complies with the good faith conference requirements of Fed. R. Civ. P. 37(a)(1).[1]

The remainder of Winn-Dixie's motion seeking an order compelling plaintiff's deposition and plaintiff's motion as a whole concern the sequence of discovery; specifically, whether Winn Dixie is entitled to withhold from production its clearly discoverable store surveillance video, which purportedly depicts the incident sued upon as it happened, until <u>after</u> it deposes plaintiff. Fed. R. Civ. P. 26(d)(2) provides:

> Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence; and (B) <u>discovery by one party does not require any other party to delay its discovery.</u> (Emphasis added).

Plaintiff's Request for Production No. 8 issued on January 23, 2015, about six weeks before Winn-Dixie issued its own written discovery and four months before plaintiff's deposition was noticed, specifically requested Winn-Dixie's surveillance video of the incident that is the basis of this claim. Winn-Dixie concedes that the video is discoverable, Record Doc. No. 11 at p. 2, but has refused to produce it based solely on its objection that it "has not been provided the opportunity to depose the Plaintiff" and "is not required to disclose any surveillance activities prior to the Plaintiff's deposition," Record Doc. No. 9-4 at p. 5, "to maintain the videos' impeachment value" until "after Plaintiff has committed

---

[1] The ordinary remedy for untimely discovery responses when they are provided <u>after</u> the filing of a motion to compel is an award of attorney's fees and costs incurred in connection with the motion. Fed. R. Civ. P. 37(a)(5)(A). However, Winn-Dixie's motion papers do not request such relief.

to her version of the accident and her injuries under oath at her deposition." Record Doc. No. 11 at p. 2.

Plaintiff's motion to compel is granted. Winn-Dixie's arguments are not supported by law, and its objection is overruled. Discovery under the Federal Rules of Civil Procedure is not a game of "gotcha." Nothing in the Federal Rules permits a party to refuse to produce impeachment evidence that is responsive to an opponent's <u>discovery</u> requests. The only basis for withholding such evidence is found in Rule 26(a)(1) and (3). However, Rule 26(a) governs <u>disclosures</u> only, not discovery, and initial disclosures were waived in this case. Record Doc. No. 8 at p. 1.

Certainly, the controlling Fifth Circuit precedent of <u>Chiasson v. Zapata Gulf Marine Corp.</u>, 988 F.2d 513, 517 (5th Cir. 1993), establishes that the contemporaneous store surveillance video at issue here is substantive, not solely or even principally impeachment evidence, and the Winn-Dixie defendants in the instant case do not argue that their surveillance video is undiscoverable. Rather, Winn-Dixie wants to be allowed to produce it only after it has deposed plaintiff. Rule 26(c)(2) authorizes a court to order "that . . . discovery may be had only on specified terms and conditions, including a designation of the time or place." Fed. R. Civ. P. 26(c)(2). "Disputes involving the timing of specific depositions in relation to other discovery fall directly within the provisions of Rule 26(c)(2) . . . . Protective orders sought under Rule 26(c)(2) which seek to regulate the terms, conditions, time or place of discovery are wholly within the court's discretion." <u>Pro</u>

Billiards Tour Ass'n, Inc. v. R. J. Reynolds Tobacco Co., 187 F.R.D. 229, 230 (M.D.N.C. 1999) (citation and footnotes omitted).

Thus, to obtain the protective order Winn-Dixie apparently seeks in this motion, defendants must show <u>good</u> <u>cause</u> under Rule 26(c) for the request to withhold the surveillance video until after plaintiff's deposition. In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998). "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact <u>as distinguished from stereotyped and conclusory statements</u>." Id. (emphasis added) (quotation omitted).

In this case, Winn-Dixie has <u>not</u> made a particular and specific demonstration of fact that withholding the surveillance evidence will either encourage a dishonest plaintiff to testify honestly or enable defendants to catch plaintiff in a lie. On the contrary, Winn-Dixie's implicit argument that withholding the surveillance video will somehow serve the search for truth is the rankest form of stereotype. Civil discovery is not a game of ambush. To conclude that a witness would lie or would testify truthfully only because of the threat that a surveillance video might offer a particular depiction of events is simply stereotyping, an exercise in speculation that was expressly discounted by the Fifth Circuit in Chiasson.

> In the context of a defendant's surveillance of a personal injury plaintiff, the argument for non-disclosure is that the plaintiff seeks the disclosure of such evidence only when it will probably show that the injury is fabricated or exaggerated. In those cases, it has been said that the potential

4

> perjurer has no cause to complain of surprise if defendants elect to disprove the case on trial instead of in the conference room.  Although that argument has a certain logical appeal, we must recognize that it proceeds on the premise that witnesses whose testimony is designed to impeach invariably have a monopoly on virtue and that evidence to which the attempted impeachment is directed is, without exception, fraudulent.
>
> That premise may well be a faulty one, because it flies directly in the face of the very purpose of discovery. The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, making a trial less a game of blind man's bluff and more a fair contest, where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success.

Chiasson, 988 F.2d at 516-17 (quotations, internal brackets and citations omitted).

Courts and commentators have recognized the danger of manipulation or selective editing of surveillance videotapes, which can, for example, compress hours of uneventful surveillance into a short tape that shows a misleading period of activity or omits a plaintiff's reactions.  Thus, an honest plaintiff has just as compelling a need as a malingerer to obtain surveillance videotapes before testifying so that she can test their accuracy and completeness.  Furthermore, the full extent of such surveillance might actually corroborate, rather than impeach, a plaintiff's testimony of injury.

> [A] truthful plaintiff may well be surprised by the content of a surveillance tape, given the photographer's ability to manipulate surveillance evidence, for example, by filming only the plaintiff's lifting of a heavy bag of groceries, but not the plaintiff's pain-riddled grimace. Thus, truthful plaintiffs, and not just potential perjurers, have a legitimate reason to inquire about the existence of such evidence.

Smith v. Diamond Offshore Drilling, Inc., 168 F.R.D. 582, 586 (S.D. Tex. 1996); see also Chiasson, 988 F.2d at 517 ("The tape shows [plaintiff] carrying on daily activities.  It was

taken at some distance and has no sound component. It requires quite a leap to conclude that because she engages in routine activities, ergo, she does so without pain. In short, we question whether the proffered videotape discredits her testimony at all."); Donna Denham & Richard Bales, The Discoverability of Surveillance Videotapes Under the Federal Rules, 52 Baylor L. Rev. 753, 768 (Fall 2000) (Generally, plaintiffs want to see videotape surveillance before testifying because it may create intentional and/or unintentional distortions and may not tell the complete story. In addition, when a surveillance film surreptitiously taken by an adversary corroborates plaintiff's claims, it is especially powerful substantive evidence for plaintiff.).

Just as the Fifth Circuit recognized in Chiasson, 988 F.2d at 517, other courts have recognized that it is rare that so-called impeachment evidence is solely of that character.

> "If a party plans to testify to one version of the facts, and the opponent has evidence supporting a different version of the facts, the opponent's evidence will tend to impeach the party by contradiction, but if discovery of this kind of evidence is not permitted the discovery rules might as well be repealed. Even those who have been most concerned about protecting impeachment material recognize that substantive evidence must be subject to discovery even though it also tends to contradict evidence of the discovering party."

Klonoski v. Mahlab, 156 F.3d 255, 270 (1st Cir. 1998) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2015, at 212 (2d ed. 1994 & Supp. 1998)).

I disagree with the rationale that defendant's interest in preserving the element of surprise and any impeachment value in its surveillance video (which may be minimal)

6

essentially outweighs plaintiff's interest in seeing defendant's substantive evidence and being able to test the accuracy and completeness of surveillance films before being deposed, when neither the Federal Rules nor any Fifth Circuit case law supports such a ruling. Winn-Dixie has failed to make the particular and specific demonstration of fact that might establish good cause to withhold this important evidence, which plaintiff has specifically and timely requested be produced, before plaintiff is deposed. Thus, defendants must produce the requested video before plaintiff is deposed.

Plaintiff's deposition testimony is obviously discoverable, and the portion of Winn-Dixie's seeking an order compelling it is granted, but only as provided herein. Based upon the authorities and for the reasons outlined above, I find that the interests of justice and the search for the truth that the discovery process is designed to foster dictate that the surveillance video responsive to plaintiff's Request for Production No. 8 must be produced by defendant to plaintiff <u>before</u> plaintiff's deposition. Accordingly,

**IT IS ORDERED** that defendant must provide plaintiff with all materials responsive to plaintiff's Request for Production No. 8 no later than **June 24, 2015**.

**IT IS FURTHER ORDERED** that, <u>after</u> production by defendant of the subject materials, plaintiff must appear for her deposition on **July 1, 2015, beginning at 9:00 a.m.**

in the office of plaintiff's counsel, 1420 Veterans Memorial Blvd., Metairie, LA 70005. The date, time and/or place of plaintiff's deposition may be altered only upon written stipulation of all counsel or by court order based upon a motion for good cause shown.

New Orleans, Louisiana, this \_\_\_\_17th\_\_\_\_ day of June, 2015.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE